[No. 16941-3-III.    Division Three.    December 23, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDERICK
EARLE PORTER, *Appellant*.

*Hugh M. Spall, Jr.*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Bruce Hanify* and *Steven R. Keller, Deputies*, for respondent.

SWEENEY, J. — An exception to Washington's privacy act, RCW 9.73, permits police investigating a felony to obtain authorization from a magistrate to intercept private conversations. RCW 9.73.090(2). The intercept application affidavit must explain why normal investigative procedures are impracticable or inadequate. RCW 9.73.130(3)(f). It must also describe with particularity the person and place subject to the intercept order. RCW 9.73.130(3)(a), (d). The dispositive question here is whether the affidavit supporting the intercept warrant leading to Frederick Porter's arrest and subsequent self-incrimination while in police custody met the statutory requirements. We conclude it did not, and reverse and dismiss the prosecution.

## FACTS

Yakima police suspected that criminal defense lawyer

Frederick Porter used illegal drugs. Confidential informant Ian Schmidt told police that Mr. Porter recently offered to represent him in a traffic matter for $4,500. Mr. Schmidt said that Mr. Porter left the room, and his girl friend, Jeannie, told Mr. Schmidt that Mr. Porter would reduce the price by $200 for every eight-ball of methamphetamine Mr. Schmidt could provide. Mr. Porter then returned to the room where he and Mr. Schmidt each "did a line" of drugs provided by Mr. Schmidt.

Based on this report, a judge approved an intercept warrant authorizing police to listen to conversations "between Ian Schmidt and Jenny [sic] and/or Fred Porter, PERTAINING TO THE CRIME OF POSSESSION OF A CONTROLLED SUBSTANCE in violation of R.C.W. 69.50[.]" The application stated that Jeannie's last name was unknown. It further stated that the initial contact was planned by telephone to Jeannie's residence, with follow-up meetings or phone calls "at locations unknown but anticipated to be in Yakima County, or adjacent Counties."

Police then recorded conversations between Mr. Schmidt and Mr. Porter, and Mr. Schmidt and Jeannie.

During the taped conversations, Mr. Porter tells Mr. Schmidt that if, and only if, Mr. Schmidt came up with $1,500 up front, could he then talk to Jeannie about an alternative method of payment for the remainder. With Mr. Porter absent, Jeannie talks openly about crank, and her own experience of paying Mr. Porter in drugs in the past. She quotes a price of $200 per eighth ounce (eight-ball) and $100 per sixteenth ounce (teener) of methamphetamine.

On the last tape, Mr. Schmidt meets Mr. Porter in a bar and gives him $500 cash. He also tries to give him a teener of methamphetamine. Mr. Porter takes the money but declines the drugs. He insists on at least another $1,000 up front and tells Mr. Schmidt to talk to Jeannie about the balance. Mr. Schmidt leaves the bar.

Police then arrested Mr. Porter for conspiracy to possess a controlled substance. At the police station, officers left Mr. Porter alone in an interview room and watched him via

closed circuit TV. Mr. Porter removed several objects from his clothing, put them in his mouth and started chewing. Officers entered the interview room and recovered a small plastic baggie containing methamphetamine from Mr. Porter's mouth, and another from his sock. They also found several empty baggies on the floor.

The State charged Mr. Porter with possession of methamphetamine.

He moved to suppress both the taped conversations and the drugs. The court denied the motion and later convicted Mr. Porter of possession following a bench trial.

A commissioner of this court denied a motion to affirm on the merits. RAP 18.14.

## DISCUSSION

■ Need for the Intercept. A judge issuing an intercept order has considerable discretion to determine whether the statutory safeguards have been satisfied. We do not review the sufficiency of the application de novo. *State v. Cisneros*, 63 Wn. App. 724, 728-29, 821 P.2d 1262 (1992). We will affirm if the facts set forth in the application are minimally adequate to support the determination. *State v. Knight*, 54 Wn. App. 143, 150-51, 772 P.2d 1042 (1989) (quoting *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir. 1977)).

Mr. Porter challenges the particularity of the intercept application with respect to the inadequacy of normal investigation procedures and the persons and places to be taped. RCW 9.73.130(3)(a), (d), (f). He contends that his arrest based on this intercept was unlawful and the drug evidence obtained while he was in custody must be suppressed.[1]

The privacy act, RCW 9.73, requires all parties to consent before a private conversation is recorded. RCW 9.73-.030(1)(b). Evidence obtained in violation of this rule is

---

[1]Mr. Porter has automatic standing to object to evidence obtained in violation of the privacy act, including conversations to which he was not a party. *State v. Williams*, 94 Wn.2d 531, 546, 617 P.2d 1012 (1980).

generally inadmissible in court for any purpose. RCW 9.73.050.

The act creates an exception to the mutual consent requirement for police investigating a felony, provided certain conditions are met. RCW 9.73.090(2). Possession of methamphetamine is a class C felony. RCW 69.50.401(d); RCW 9A.20.021(1)(c). Police could therefore obtain authorization from a magistrate to tape conversations to which only one party—here, Mr. Schmidt—consents. RCW 9.73-.090(2).

This exception applies, however, only if police first make a particularized showing of need. RCW 9.73.130(3)(f); *State v. Gonzalez*, 71 Wn. App. 715, 719, 862 P.2d 598 (1993) (citing *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992)), *overruled on other grounds by State v. Jiminez*, 128 Wn.2d 720, 911 P.2d 1337 (1996). Once the need for an intercept is established, the authorization application affidavit must describe with particularity the persons and places subject to the intercept. RCW 9.73.130(3)(a), (d).

■ We discuss first the particularized showing of need required by RCW 9.73.130(3)(f). The affidavit must contain a "particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ[.]" RCW 9.73.130(3)(f). Police need not make a showing of absolute necessity; the need requirement is interpreted in a "common sense fashion." *State v. Platz*, 33 Wn. App. 345, 349-50, 655 P.2d 710 (1982).

The crime under investigation here was possession of a controlled substance. The usual investigative technique is to obtain a warrant to search the suspect's premises,[2] or to arrest the suspect for some other reason and conduct an incident search.[3]

---

[2]*See, e.g., State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994).

[3]*State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999).

The intercept affidavit does not allege that these methods, or, for that matter, any other methods were tried or were unlikely to succeed. In fact, there is no indication that the Yakima police tried, or even considered, other investigative techniques. *See State v. Manning*, 81 Wn. App. 714, 720, 915 P.2d 1162 (1996). Moreover, a successful conviction for possession generally requires that the State produce the actual drugs found in the suspect's actual or constructive possession. The affidavit here does not suggest what taped conversations would add to a successful prosecution if drugs were found in Mr. Porter's possession, or what deficiencies in the proof such conversations would remedy if no drugs were found.

An intercept may have been appropriate if proof of knowledge of the illegal nature of the possessed property were an element of the offense. *State v. Kichinko*, 26 Wn. App. 304, 311-12, 613 P.2d 792 (1980) (attempt to possess stolen property; knowledge the property was stolen is an element of the crime). The Porter application erroneously states that proof of knowledge is required for a successful drug possession prosecution. Knowledge is not an element of possession under RCW 69.50.401(d).

The application also alleges "an ongoing investigation into a drug distribution conspiracy" premature disclosure of which may impair "determining the identities of others who may be involved and endanger the participants." This seems somewhat overstated. There is no indication in this record of any ongoing drug "distribution" conspiracy by Mr. Porter, or anyone else for that matter. He simply allegedly used drugs and bartered services for them.

Nor does the application describe the particulars of Mr. Porter's suspected criminal conduct. The justification here, then, is not so different from one rejected by the court in *Manning*: "Such justifications merely support the truism that having a recording to play at trial is advantageous to the State in obtaining a conviction." *Manning*, 81 Wn. App. at 720.

The showing of need for this intercept is then inadequate.

■ Exception to Particularity Requirement. The State also argues that RCW 9.73.090(5) eliminates the requirement to identify with particularity the person and the place in the application for the intercept warrant. It is mistaken. RCW 9.73.090(5) does not eliminate the particularity requirement for investigation of simple drug possession unaccompanied by actual or intended manufacture, delivery or sale.

The State's reliance on *State v. D.J.W.* is also misplaced. *State v. D.J.W.*, 76 Wn. App. 135, 882 P.2d 1199 (1994), *aff'd sub nom. State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996). In that case, the undercover investigation was of street delivery and sale of controlled substances, not simple possession. The exception of RCW 9.73.090(5) was therefore in effect. Again, the Porter investigation was for simple possession.

Independent Grounds for Probable Cause. The State argues that the legality of the arrest is irrelevant because Mr. Porter gave police ample probable cause to arrest when he attempted to ingest drugs while in custody. But the voluntariness of Mr. Porter's incriminating conduct after his arrest becomes irrelevant if he was unlawfully seized. *State v. Gonzales*, 46 Wn. App. 388, 401, 731 P.2d 1101 (1986). Voluntariness is relevant to Fifth Amendment self-incrimination analysis, not to Fourth Amendment "poisonous tree" analysis. *Id.* at 398 n.1 (citing *State v. Byers*, 88 Wn.2d 1, 7, 559 P.2d 1334 (1977), *overruled on other grounds by State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984)).

■ Evidence directly produced by an unlawful seizure is inadmissible. *State v. White*, 97 Wn.2d 92, 101, 640 P.2d 1061 (1982) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). All evidence derived from an unlawful intercept is inadmissible. *State v. Fjermestad*, 114 Wn.2d 828, 835-36, 791 P.2d 897 (1990); *Gonzalez*, 71 Wn. App. at 720. "[O]nce the police step outside the boundaries delineated by the law, we have no choice but to make inadmissible any information obtained." *Fjermestad*, 114 Wn.2d at 837.

Failure to comply with the statutory safeguards requires exclusion of evidence illegally obtained. RCW 9.73.050; *State v. Irwin*, 43 Wn. App. 553, 557, 718 P.2d 826 (1986); *Kichinko*, 26 Wn. App. at 310-11. If the issuance of the intercept warrant against Mr. Porter and Jeannie was not authorized by statute, the arrest based on the intercepted conversations was unlawful. If the arrest was unlawful, the evidence obtained in police custody was not admissible.

The Legislature added the procedural requirements of RCW 9.73.130 and amended RCW 9.73.090 after the privacy act's original passage. By doing so, it intended that failure to comply with the procedures would render an order based upon a faulty application unlawful. *Kichinko*, 26 Wn. App. at 310-11. Absent minimal compliance, the legislative purpose in interposing procedural safeguards between the police and the public prevails.

■ Harmless Error. Failure to suppress evidence obtained in violation of the privacy act is prejudicial unless, within reasonable probability, the erroneous admission of the evidence did not materially affect the outcome of the trial. *State v. Rupe*, 101 Wn.2d 664, 681-82, 683 P.2d 571 (1984). Here, of course, the only incriminating evidence gathered directly resulted from this illegal intercept.

The conviction is reversed.

SCHULTHEIS, C.J., and KURTZ, J., concur.

Review denied at 140 Wn.2d 1024 (2000).