102 P.3d 789 (2004)
153 Wash.2d 186
STATE of Washington, Respondent,
v.
Oliver C. CHRISTENSEN, Petitioner.
No. 74839-0.
Supreme Court of Washington, En Banc.
Argued October 19, 2004.
Decided December 9, 2004.
As Amended on Denial of Reconsideration January 31, 2005.
*790 Michael John Tario, Tario & Associates PS, Bellingham, for Petitioner.
Randall Keenan Gaylord, Friday Harbor, Philip James Buri, Buri Funston PLLC, Bellingham, for Respondent.
Douglas B. Klunder, Seattle, for Amicus Curiae American Civil Liberties Union.
CHAMBERS, J.
A mother, using the speakerphone function of the family's cordless telephone system, surreptitiously listened to a conversation between her daughter and her daughter's boyfriend in which a crime was discussed. The mother was permitted to testify against the boyfriend at his trial about what she overheard. We conclude that under the Washington privacy act, the conversation in question was a private one and the base unit of the cordless telephone was a device designed to transmit. We reverse.

STATEMENT OF THE CASE
On October 24, 2000, two young men approached an elderly woman walking down the street in Friday Harbor, Washington. One of the men grabbed the woman's purse and, after a struggle in which the woman fell and broke her glasses, the young men fled with the purse.
San Juan County Sheriff Bill Cumming suspected Oliver Christensen, a local 17- year-old, of involvement in the robbery. He believed that evidence of the robbery might be found in the house of Christensen's then-girl friend, Lacey Dixon. Sheriff Cumming contacted Mrs. Dixon, Lacey's mother, and obtained her consent to search her home for evidence of the crime. He found no evidence in Mrs. Dixon's home, but asked her to keep a lookout for any evidence of the crime that might surface.
*791 Christensen later telephoned Lacey. When he called, Mrs. Dixon answered the telephone. She handed the cordless handset to her daughter, who took it upstairs into her bedroom and closed the door. Mrs. Dixon activated the speakerphone function of the cordless telephone system by pressing a button on the base unit. Mrs. Dixon took notes from the conversation she overheard, in which Christensen acknowledged to Lacey that he was aware that police suspected him of the robbery and that he knew the whereabouts of the purse, but not that he had taken part in the robbery. Neither Christensen nor Lacey knew of, or consented to, Mrs. Dixon listening to their conversation.
Over Christensen's objection at trial, Mrs. Dixon testified as to the substance of the conversation she overheard.[1] In addition to Mrs. Dixon, the State offered the testimony of four other witnesses, only one of whom could identify Christensen as a participant in the robbery. That witness, an acquaintance of Christensen's, had agreed to testify for the State on the same day he agreed to plead guilty to the same robbery. He testified that on the night of the robbery, he had been high on methamphetamine during a meth binge but remembered Christensen being involved in the robbery. Christensen was convicted of second degree robbery.
The Court of Appeals affirmed the trial court's decision to admit Mrs. Dixon's testimony. State v. Christensen, 119 Wash.App. 74, 79 P.3d 12 (2003). We granted review, State v. Christensen, 151 Wash.2d 1031, 95 P.3d 758 (2004).

DISCUSSION
We must decide whether this state's privacy act was violated when Mrs. Dixon listened to the conversation between Christensen and Lacey on the base unit of the cordless telephone without their permission. The act provides that it is unlawful for any individual to "intercept, or record any:"
[p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication.
RCW 9.73.030(1)(a) (emphasis added). Evidence obtained in violation of the act is inadmissible for any purpose at trial. RCW 9.73.050.
There are essentially four prongs in analyzing alleged violations of the privacy act. There must have been (1) a private communication transmitted by a device, which was (2) intercepted by use of (3) a device designed to record and/or transmit, (4) without the consent of all parties to the private communication. RCW 9.73.030.
The parties do not dispute that Mrs. Dixon's act of listening in on the base unit of the cordless telephone system was an "intercept" under the act. There is also no dispute that the intercept was accomplished without the consent of "all the participants." Thus, the only remaining issues are whether the conversation was a private one and whether the base unit of the cordless telephone was a device designed to record and/or transmit.

PRIVATE COMMUNICATIONS
Generally, the question of whether a particular communication is private is a question of fact, but may be decided as a question of law where the facts are undisputed. State v. Townsend, 147 Wash.2d 666, 673, 57 P.3d 255 (2002) (citing State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996)). The facts are not in dispute.
Christensen argues that based on their reasonable expectations and subjective intent, the conversation between him and Lacey was private. The State suggests, however, that because Lacey and Christensen knew that it was possible that their calls would be monitored, their expectation of privacy was *792 not reasonable despite their subjective intent.
While the term "private" is not defined in the act, this court has adopted the dictionary definition: "`belonging to one's self ... secret ... intended only for the persons involved (a conversation) ... holding a confidential relationship to something ... a secret message: a private communication ... secretly: not open or in public.'" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969), quoted in Townsend, 147 Wash.2d at 673, 57 P.3d 255.
A communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable. Townsend, 147 Wash.2d at 673, 57 P.3d 255. Factors bearing on the reasonableness of the privacy expectation include the duration and subject matter of the communication, the location of the communication and the potential presence of third parties, and the role of the nonconsenting party and his or her relationship to the consenting party. Clark, 129 Wash.2d at 225-27, 916 P.2d 384. We have held that parties to a conversation on a cordless telephone do not have a lowered expectation of privacy. State v. Faford, 128 Wash.2d 476, 485, 910 P.2d 447 (1996).
Christensen and Lacey subjectively intended to have a private conversation. Christensen manifested this intent by asking to speak to his girl friend. Lacey manifested this intent by taking the cordless telephone from her mother, going upstairs to her bedroom, and closing the door.
The expectation of privacy was reasonable. The State contends that the parties' expectation of privacy was not reasonable because they should have known that someone could have been listening in to their call. We have repeatedly held that the mere possibility that intrusion on otherwise private activities is technologically feasible does not strip citizens of their privacy rights. Faford, 128 Wash.2d at 485, 910 P.2d 447 (citing State v. Young, 123 Wash.2d 173, 186, 867 P.2d 593 (1994); State v. Myrick, 102 Wash.2d 506, 513-14, 688 P.2d 151 (1984)).
The State also suggests that there should be an implied exception to the act in the case of minor children, arguing that children have a reduced expectation of privacy because parents have an absolute right to monitor all telephone calls coming into the family home. The federal wiretap statute, which makes interception of communications legal where one party consents, has been interpreted to permit parents acting to protect the welfare of a child, to consent vicariously for their child to the recording of their child's conversations. See, e.g., Pollock v. Pollock, 154 F.3d 601, 602 (6th Cir.1998); Scheib v. Grant, 22 F.3d 149, 154 (7th Cir.1994); Newcomb v. Ingle, 944 F.2d 1534, 1536 (10th Cir.1991); Janecka v. Franklin, 843 F.2d 110, 110 (2d Cir.1988); Campbell v. Price, 2 F.Supp.2d 1186, 1191-92 (E.D.Ark.1998). The Washington act, with its all-party consent requirement, contains no such parental exception and no Washington court has ever implied such an exception. We decline to do so now.
The State also alleges that because Mrs. Dixon had listened in to her daughter's conversations in the past, reasonable expectations of privacy had been destroyed. There is no evidence in the record, however, that either Lacey or Christensen was aware of Mrs. Dixon's earlier monitoring. Furthermore, since it is Christensen's expectation of privacy with which we are concerned, even if Lacey did have a lowered expectation of privacy based on the nature of the relationship with her mother, it cannot reasonably be said that Christensen's expectation was similarly lowered. The parties' conversation was private.

DEVICE DESIGNED TO TRANSMIT
There is no indication that the speakerphone function on the base unit of a cordless telephone system is a "device designed to record." We must, then, decide whether the base unit of a cordless telephone system is within the category of "any device" designed to transmit, a question of first impression in this court. The interpretation of a statute is a question of law and subject to de novo review. Rest. Dev., Inc. v. Cananwill, *793 Inc., 150 Wash.2d 674, 681, 80 P.3d 598 (2003).
In interpreting a statute, this court's primary obligation is to give effect to the legislature's intent. Id. This inquiry always begins with the plain language of the statute. Id. at 681-82, 80 P.3d 598. The court must not add words where the legislature has chosen not to do so. Id. Additionally, where the statute is subject to more than one reasonable interpretation, this court may look to other sources of legislative intent, such as the legislative history. Id.
Christensen argues that the base unit of a cordless telephone system, with its attached speakerphone component, is a "device designed to transmit" under the act. The State argues that the speakerphone portion of the base unit of a cordless telephone is not such a device.
The section of the privacy act dealing with electronic communications was passed in 1967, before advances in communications technology such as cordless and cellular telephones had been developed. Neither the term "device" nor the term "transmit" is defined in the statute. Absent a statutory definition of a term, courts may resort to dictionaries to ascertain the common meaning of statutory language. See State v. Pacheco, 125 Wash.2d 150, 154, 882 P.2d 183 (1994).
In Faford, another case involving the interception of cordless telephone conversations, this court rejected the narrow definition of the word "transmit" that had been adopted by the trial court. On direct review of the superior court in that case, we held that "[i]n light of the breadth of the act's purpose," the preferred definition should include "alternative definitions from Webster's Third New International Dictionary, such as `disseminate' or `communicate.'" Faford, 128 Wash.2d at 483-84, 910 P.2d 447. We further observed that for the purposes of intercepting a cordless telephone conversation, "transmission occurs in the conversion of inaudible sound waves and their emission as audible sound." Id. at 483, 910 P.2d 447 (citing United States v. Smith, 978 F.2d 171, 175 n. 5 (5th Cir.1992)).
The State argues that the speakerphone function of the base unit of the cordless telephone is not within the category of "any device" designed to transmit. The State relies primarily on two cases interpreting the act: State v. Corliss, 123 Wash.2d 656, 870 P.2d 317 (1994) and State v. Bonilla, 23 Wash.App. 869, 598 P.2d 783 (1979).
In Corliss, we held that police did not violate the privacy act by having a drug informant, who was attempting to arrange drug sales, tilt a telephone receiver away from his ear so that a police officer could listen in to the conversation. In a brief discussion, we reasoned that merely listening in to a conversation did not involve an "interception" by a "device." Corliss, 123 Wash.2d at 662, 870 P.2d 317. The facts of Corliss are markedly different from the facts of this case. In Corliss, the police officer merely heard a conversation in the same manner as the police informant who was a party to the conversation. In contrast, Mrs. Dixon heard a conversation from an intermediate location between Christensen's telephone extension and Lacey's mobile handset, and without the knowledge of either party.
Corliss is unhelpful because it involves a situation in which one of the parties to the private conversation consented, and it did not involve an "interception" by a surreptitious third party to the call. The police officer in that case was a party to the call. Mrs. Dixon was not a party to the conversation between Lacey and Christensen.
Bonilla is also of limited guidance because it did not directly address the definition of the term "device" under the act. The issue before the Bonilla court was whether an interception had occurred. The defendant in Bonilla called a police dispatcher several times and confessed to murdering his wife. The dispatcher summoned another officer to listen in on the calls. The Bonilla court correctly held that the defendant had no reasonable expectation of privacy under such circumstances. The court reasoned that there was no illegal "interception" and that the defendant's conversation was not a "private communication." Without supporting authority or analysis, the court's opinion contained two conclusory sentences implying *794 that an extension telephone is not a device within the meaning of the privacy act. Bonilla, 23 Wash.App. at 873, 598 P.2d 783. Yet, the meaning of the word "device" was neither briefed nor argued by the parties in Bonilla. The Bonilla court's gratuitous statements about the meaning of the term "device" under the statute was, therefore, mere dicta.
Had the State argued and proved that Mrs. Dixon's act of listening in to her daughter's conversation with Christensen was not an intercept, the resolution of this case might well have proceeded down a different analytical path.[2]
The Bonilla court also implied that a separate device from the one used in the communication is required by the statute. We recently rejected this requirement, holding that "it makes no difference that the [violation] was accomplished on a device that was used in the communication." Townsend, 147 Wash.2d at 674, 57 P.3d 255. The State attempts to distinguish Townsend by suggesting that the separate device requirement applies only to devices designed to record, and not devices designed to transmit. The act, however, makes no such distinction.
We adhere to Faford. We must interpret the privacy act in a manner that ensures that the private conversations of this state's residents are protected in the face of an ever-changing technological landscape. This must be done so as to ensure that new technologies cannot be used to defeat the traditional expectation of privacy. For purposes of the privacy act, the word "transmit" means to disseminate or communicate. Here the base unit of the cordless telephone both received and transmitted. The base unit received inaudible sound waves, and transmission occurred when those sound waves and their emissions were converted into audible sound. The base unit further transmitted inaudible radio signals to the cordless handset. The base unit of the cordless telephone was a device designed to transmit within the meaning of Washington's privacy act.
While the statute itself is unambiguous, a survey of the legislative history only serves to buttress this conclusion. Since 1909, the privacy act has protected sealed messages, letters, and telegrams from being opened or read by someone other than the intended recipient. RCW 9.73.010-.020. In 1967, the legislature amended the act in order to keep pace with the changing nature of electronic communications and in recognition of the fact that there was no law that prevented eavesdropping. See HOUSE JOURNAL, 40th Leg., 1st Ex.Sess., at 2030-31 (Wash.1967). In doing so, Washington's privacy statute became "one of the most restrictive in the nation." Townsend, 147 Wash.2d at 672, 57 P.3d 255.[3]
The federal government and 49 states have enacted privacy or eavesdropping statutes (all of which are at least as restrictive as the federal statute).[4] Washington, however, is *795 among only 11 states that require that all parties to a private communication must consent to its disclosure.[5] The so-called "all-party consent" rule adds an additional layer of protection to the private conversations of this state's residents.[6] In balancing the legitimate needs of law enforcement to obtain information in criminal investigations against the privacy interests of individuals, the Washington statute, unlike similar statutes in 38 other states, tips the balance in favor of individual privacy at the expense of law enforcement's ability to gather evidence without a warrant.[7] Since 1967, the legislature has twice made amendments to the act without amending the "all-party consent" provision.
In State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), this court cited the act as evidence to support our unanimous decision to use independent state constitutional grounds to find that use of a pen register violated the state constitution, even though it did not violate the Fourth Amendment:
The State of Washington has a long history of extending strong protections to telephonic and other electronic communications. For example [the privacy act], RCW 9.73.010, which makes it a misdemeanor for anyone to wrongfully obtain knowledge of a telegraphic message, was enacted in 1909 and is based on section 2342 of the Code of 1881. The 1881 Code, adopted before statehood, extensively regulated telegraphic communications. See Code of 1881, §§ 2342-62. Our present statute is broad, detailed and extends considerably greater protections to our citizens in this regard than do comparable federal statutes and rulings thereon.... The long history and tradition of strict legislative protection of telephonic and other electronic communications in this state lends strong support to our decision to resort to independent state constitutional grounds in this case.
Id. at 66, 720 P.2d 808 (citation and footnote omitted). This court, thus, gave endorsement to Washington's long-standing tradition of affording great protection to individual privacy. If any textual ambiguity about the meaning of the statute lingers, it ought to be resolved in favor of giving effect to the legislative intent of the statute. It is, of course, within the province of the legislature to shift this statutory balance should it decide the residents of this state require less privacy protection.

PREJUDICIAL ERROR
The State maintains that even if there was error in admitting Mrs. Dixon's testimony, the error was harmless. Christensen asserts that admitting the testimony was prejudicial. Failure to suppress evidence obtained in violation of the act is prejudicial unless, within reasonable probability, the erroneous admission of the evidence did not materially affect the outcome of the trial. State v. Porter, 98 Wash.App. 631, 638, 990 P.2d 460 (1999).
The erroneous admission of Mrs. Dixon's testimony was prejudicial. Her testimony was likely the most credible of those witnesses who testified about Christensen's alleged involvement in the robbery. She listened to *796 the conversation between Lacey and Christensen soon after the incident and made personal notes about the conversation. She referenced those notes on the witness stand. It cannot reasonably be held that the admission of her testimony did not materially affect the outcome of the trial.

CONCLUSION
The Washington privacy statute puts a high value on the privacy of communications. In light of its strong wording, the act must be interpreted to effectuate the legislative intent. Based on the subjective intentions and reasonable expectations of Christensen and Lacey, their conversation was a private one. Based on the plain meaning of the term "transmit," we hold that the speakerphone component of the base unit of a cordless telephone is a device designed to transmit under the privacy act. It was error to admit Mrs. Dixon's testimony regarding what she heard over the speakerphone and that error was not harmless.
This matter is reversed and remanded for a new trial consistent with this opinion.
We concur: ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ.
NOTES
[1] The trial court ruled that the statements that Mrs. Dixon related were not excludable as hearsay either because they were direct admissions to the crime or adoptive admissions. See ER 801(d)(2). This ruling was predicated on the fact that during his conversation with Lacey, Christensen did not dispute his involvement in the crime despite the opportunity to do so.
[2] Because the Bonilla court's analysis focused on the word "interception" and because the court observed that the police merely "overheard the conversation ... without benefit of a recording or transmitting device," Bonilla, 23 Wash.App. at 873, 598 P.2d 783, the court may have inferred that the dispatcher had received the call without having intercepted it and then shared the call with other officers by her consent. Thus, one prong of the act, "interception," was not satisfied. We note that the act requires the consent of all parties, a requirement not analyzed by the Bonilla court. Because the state concedes that the communication was intercepted in this case, we do not analyze that prong here.
[3] Arguably, the most significant piece of evidence about the extent to which the legislature intended to restrict eavesdropping is the all-party consent requirement. See RCW 9.73.030 (requiring the consent of all participants in the conversation).
[4] The Omnibus Crime Control and Safe Streets Act of 1968 (OCCSA), Pub.L. No. 90-351, 82 Stat. 197 (codified as amended at 18 U.S.C. §§ 2510-2522) was passed by Congress in order to give legislative effect to Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in which the United States Supreme Court overruled its decision in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). The Katz court had held that:

the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.
Katz, 389 U.S. at 351-52, 88 S.Ct. 507 (citations omitted). In passing the OCCSA, Congress extended privacy protections by preventing the interception of oral and wire communication without the consent of at least one of the parties to the communication. Carol M. Bast, What's Bugging You? Inconsistencies and Irrationalities of the Law of Eavesdropping, 47 DEPAUL L.REV. 837, 843 (1998).
[5] The other states are: California, Delaware, Florida, Illinois, Maryland, Massachusetts, Michigan, Montana, New Hampshire, and Pennsylvania. Bast, supra, at 869 n. 313.
[6] See Bast, supra, at 916 (concluding that privacy statutes, especially state statutes, place a "higher value on privacy than obtaining evidence"). Bast also notes that protection of privacy is important because it promotes positive values such as a healthy, liberal, democratic, and pluralistic society; individual autonomy; mental health; creativity; and the capacity to form and maintain meaningful relations with others. Id. at 885.
[7] The act does not neglect the legitimate needs of law enforcement to obtain information pursuant to a criminal investigation. The act explicitly authorizes law enforcement to intercept, record, or disclose oral communications where the law enforcement officer is a party to the conversation or one of the parties to the conversation has given consent, provided that prior to the transmission or recording, the law enforcement officer must obtain authorization from a judge or magistrate based on probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony. RCW 9.73.090(2).