[No. 24345-1-III.   Division Three.   February 27, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. DEVENNIYON
MARQUISE COURTNEY, *Appellant*.

*Donald G. Miller*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

¶1 KULIK, J. — Devenniyon Courtney was convicted of first degree murder, first degree burglary, two counts of first degree robbery, attempted first degree robbery, and first degree unlawful possession of a firearm. Two witnesses held at gunpoint by Mr. Courtney identified Mr. Courtney as the killer. On appeal, Mr. Courtney contends that his video-taped confession was inadmissible at trial because law enforcement violated the Washington privacy act; that he received ineffective assistance of counsel; and that the photomontage presented by the police to eyewitnesses was unduly suggestive. We conclude that the admission of the videotape was erroneous but that Mr. Courtney did not show that the outcome of the trial would have been different had the videotape been excluded. We also conclude that counsel was not ineffective and the photomontage was not unduly suggestive. We affirm Mr. Courtney's convictions.

## FACTS

¶2 On October 19, 2004, Marvin Moyer, Clifton Brown, and Martin Doerring were sharing a room at the Apple Tree Inn. The three men were construction workers from out of state. After work that day, Mr. Moyer and Mr. Brown returned to their hotel room while Mr. Doerring stopped by a local bar. Late that evening, Mr. Moyer and Mr. Brown heard a knock at their hotel room door. Mr. Moyer opened the door and was confronted by a man later identified as Devenniyon Courtney. Mr. Courtney was armed with a gun.

¶3 Mr. Courtney told Mr. Moyer and Mr. Brown to hand over their wallets. The two men complied. Mr. Courtney then asked the men if they had any money hidden in the hotel room and he began to rifle through the drawers of the hotel nightstand. Mr. Courtney also asked if there were any other people returning to the hotel room. He was told that Mr. Moyer and Mr. Brown were waiting for Mr. Doerring to return.

¶4 Mr. Courtney ordered Mr. Brown and Mr. Moyer into a back bedroom. After about half an hour, Mr. Doerring returned from the bar and knocked on the hotel room door. Mr. Courtney answered the door and demanded that Mr. Doerring turn over all of his money.

¶5 Mr. Doerring refused to turn over his possessions and the two men began to fight. Mr. Doerring fell backwards and grabbed Mr. Courtney as he went down. Mr. Courtney shot Mr. Doerring in the stomach to break free from his grip. Mr. Doerring died from the gunshot wound to his abdomen.

¶6 Two informants told police that Mr. Courtney had committed the robbery and shooting. Law enforcement placed Mr. Courtney under arrest. Mr. Courtney waived his right to remain silent and his right to an attorney. The police videotaped his confession, but they did not record Mr. Courtney's *Miranda*[1] waiver as part of the taped confes-

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

sion. There was a 20 minute delay between Mr. Courtney's waiver and the time that his confession was recorded.

¶7 During Mr. Courtney's confession, he told law enforcement the location of the gun that was used in the shooting. Police recovered the gun in the place where Mr. Courtney had indicated that he had hidden it. Forensic experts confirmed that this gun was used to kill Mr. Doerring.

¶8 Law enforcement generated a photographic montage that included Mr. Courtney and presented it to Mr. Moyer and Mr. Brown. Each made separate identifications of Mr. Courtney from the photographic lineup. After Mr. Moyer identified Mr. Courtney, police told him that they had the person he identified in custody. An officer also told Mr. Brown and Mr. Moyer that they had picked the same man.

¶9 The State charged Mr. Courtney with first degree murder, first degree burglary, two counts of first degree robbery, attempted first degree robbery, two counts of first degree kidnapping, and first degree unlawful possession of a firearm.

¶10 Mr. Courtney pleaded guilty to the charge of unlawful possession of a firearm and proceeded to a jury trial on the remaining counts. Through trial counsel, Mr. Courtney sought to suppress the witness identification, asserting that the photomontage was impermissibly suggestive. He also asked the court to disallow any in-court identification of Mr. Courtney as tainted by the prior suggestive identification procedures. Mr. Courtney moved to suppress all evidence uncovered because of his confession. He contended that he asked repeatedly for a lawyer before signing the waiver but that law enforcement persisted in questioning him after his request for counsel. The trial court admitted Mr. Courtney's taped confession and the witness identifications.

¶11 The jury found Mr. Courtney guilty of first degree murder, first degree burglary, two counts of first degree robbery, and attempted first degree robbery. The jury also found by special verdict that Mr. Courtney was armed with

a deadly weapon when he committed these crimes. The jury was unable to reach a verdict on the kidnapping charges.

¶12 After the verdict, Mr. Courtney sought a new trial based on his assertion of a violation of the Washington privacy act (privacy act), chapter 9.73 RCW. Mr. Courtney contends that law enforcement failed to inform him during the videotape recording of his constitutional rights to remain silent and to counsel. Trial counsel admitted that he did not discover this statute until after the videotaped confession was admitted and shown to the jurors at trial. The trial court denied this motion. This appeal followed.

## ANALYSIS

*1. Did law enforcement violate the privacy act by failing to inform Mr. Courtney of his* Miranda *rights during the videotaped confession?*

¶13 This case involves interpretation of the privacy act. Interpretation of a statute is a question of law that this court reviews de novo. *State v. Christensen*, 153 Wn.2d 186, 194, 102 P.3d 789 (2004).

¶14 Mr. Courtney asserts that his videotaped confession and all evidence derived therefrom should have been excluded from trial based on police violations of the privacy act.

¶15 Generally, the privacy act applies only to private communications. *See id.* at 192. There is no reasonable expectation of privacy for persons in custody undergoing custodial interrogations. *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 467, 139 P.3d 1078 (2006). But the legislature has enacted provisions in the privacy act that govern the conditions under which police may make recordings of suspects during custodial interrogations. *Id.* at 465-67; RCW 9.73.090. Such recordings must strictly comply with statutory provisions to ensure that consent to the interrogation is capable of proof and to avoid a "swearing contest" regarding whether such consent actually occurred. *State v. Cunningham*, 93 Wn.2d 823, 829, 613 P.2d 1139 (1980).

¶16 RCW 9.73.090(1)(b) requires that an arrested person must be fully informed of his or her constitutional rights at the beginning of the recording, and that this statement must be included in the recording. In order to satisfy this statutory requirement, a recorded statement must include a complete statement of the accused's *Miranda* rights. *State v. Mazzante*, 86 Wn. App. 425, 428, 936 P.2d 1206 (1997). Here, Mr. Courtney was never informed of his rights on the recording of his custodial interrogation, even though he had signed a *Miranda* waiver of his rights prior to the recording. This recording violated the privacy act.

*2. Does any violation of the privacy act require suppression of both the tape recording and any evidence derived from the recorded confession?*

¶17 Mr. Courtney asserts that the officers' violation of the privacy act required the suppression of not only the videotaped confession, but all of the evidence derived from it. He bases his argument largely on RCW 9.73.050, which requires suppression of any information obtained in violation of provisions of the privacy act. The derivative evidence Mr. Courtney asks this court to suppress includes the murder weapon that was located as a result of Mr. Courtney's confession.

¶18 But a violation of section .090 of the privacy act does not require suppression of derivative evidence. *Lewis*, 157 Wn.2d at 472. The portion of the act requiring suppression of derivative evidence applies only to private conversations; and, as previously noted, custodial interrogations are not private conversations. *Id.* at 471-72. Instead, it is only the recordings themselves that are inadmissible. *Id.* at 472.

¶19 Admission of evidence in violation of the privacy act is a statutory, and not a constitutional, violation. *Cunningham*, 93 Wn.2d at 831. This error is not prejudicial unless the erroneous admission of the evidence materially affected the outcome of the trial. *Id.* Here, Mr. Courtney's conviction should be reversed only if there is a

reasonable probability that the outcome of the trial would have been different had the taped confession been excluded.

¶20 In this case, the remaining evidence of guilt was overwhelming. Two separate eyewitnesses identified Mr. Courtney as the individual who held them at gunpoint, robbed them, and killed Mr. Doerring. Mr. Courtney led police to a gun that was hidden in some bushes. This gun was identified as the weapon that was used to shoot Mr. Doerring. Based on the strength of this evidence, there is no reasonable probability that the outcome of the trial would have been different if Mr. Courtney's taped confession had been excluded.

*3. Did Mr. Courtney receive ineffective assistance of counsel because trial counsel failed to timely raise the privacy act violation prior to trial?*

¶21 Washington has adopted the two-part test from *Strickland v. Washington*[2] to evaluate claims of ineffective assistance of counsel. *State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987). The defendant must first show that counsel's performance was deficient—that it fell below an objective standard of reasonableness. *Id.* at 225-26. The defendant must then demonstrate that the defendant was prejudiced by trial counsel's deficient performance. *Id.* This requires a showing that, but for counsel's errors at trial, the result of the trial would have been different. *Id.* at 226. The court engages in a strong presumption that counsel was effective. *Id.* Ineffective assistance of counsel is not demonstrated by matters of trial strategy or tactics. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

¶22 Here, Mr. Courtney asserts that his trial counsel provided him constitutionally ineffective assistance when he failed to raise an objection to the admissibility of the videotaped confession based on the violation of the privacy act. Mr. Courtney argues that had trial counsel

---

[2] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

raised this objection, the videotape and all evidence that was obtained from it would have been excluded at trial. He also claims that he was prejudiced by this failure since the confession and the weapon obtained from his confession were the bulk of the State's case.

¶23 Trial counsel's failure to raise the privacy act violation in a timely fashion was not a matter of trial strategy or tactics. Had counsel timely raised the objection, the videotaped confession would likely have been excluded but the derivative evidence obtained from the confession would be admissible. The strength of the remaining evidence supports the conclusion that the jury would have reached the same verdict. Here, there was substantial evidence other than the videotaped confession that supported a finding of guilt. Two eyewitnesses identified Mr. Courtney in court and in a prior photographic lineup. The witnesses were held in a hotel room by Mr. Courtney for over half an hour. In addition, Mr. Courtney informed law enforcement where to find the gun that was identified as the one used to shoot Mr. Doerring.

¶24 Given the extent of the evidence in this case, it is not likely that the verdict would have been different had the videotaped confession been excluded at trial. Mr. Courtney has not demonstrated prejudice and his claim of ineffective assistance of counsel is without merit.

*4. Was the photomontage impermissibly suggestive?*

¶25 Photographic identification procedures violate due process if the procedures give rise to a substantial likelihood of irreparable misidentification. *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002). The defendant must establish both that the identification procedures were impermissibly suggestive and the substantial likelihood of misidentification as a result. *Id*. Minor differences between the individuals in a photomontage are not sufficient to establish impermissibly suggestive procedures. *Id*. at 118-19. But statements reinforcing an identification made by police may be impermissibly suggestive, even if the rein-

forcement occurs after the identification is made. *See State v. McDonald*, 40 Wn. App. 743, 746, 700 P.2d 327 (1985).

¶26 Here, police made statements to both eyewitnesses after their identifications. Police told Mr. Moyer that the person he identified was already in custody. Mr. Brown and Mr. Moyer were informed that they had picked the same person. These statements may have reinforced Mr. Moyer's and Mr. Brown's identifications.

¶27 Even if the statements made by law enforcement were impermissibly suggestive, there also must be a substantial likelihood of misidentification resulting from that suggestiveness. *Vickers*, 148 Wn.2d at 118. Courts evaluate the reliability of an identification by looking at the totality of the circumstances. *Id*. Factors influencing this determination may include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of any prior description of the criminal, the level of certainty of the identification, and the amount of time between the crime and the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

¶28 The trial court considered Mr. Courtney's assertion that the reinforcement provided after the identification tainted Mr. Moyer's and Mr. Brown's in-court identifications. The court found that there was a significant independent opportunity for the witnesses to observe Mr. Courtney, and therefore it was unlikely that any statements made after the identification had any influence on the in-court identification. The record supports the trial court's determination of reliability.

¶29 We affirm the convictions.

SWEENEY, C.J., and BROWN, J., concur.