**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
7/5/2022
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

In the Matter of the Detention of:

A.C.,

                    Appellant.

DIVISION ONE

No. 82967-0-I

PUBLISHED OPINION

DWYER, J. — A.C. appeals from an order committing him to up to 14 days of involuntary mental health treatment, contending that the petition for his detention did not comply with the requirements of the involuntary treatment act (ITA). This is so, A.C. asserts, because one of the signers of the petition did not personally examine him. As the ITA did not require the person who signed the petition to do so, we affirm.

I

A.C. was referred to a designated crisis responder after being taken into custody on a federal probation violation after he was observed talking to himself and behaving oddly. After evaluating A.C., the designated crisis responder filed a petition for initial detention pursuant to the ITA. A.C. was admitted to Navos Multicare Inpatient, an evaluation and treatment facility. On July 16, 2021, Navos filed a petition to detain A.C. for up to 14 days of involuntary mental health treatment. The petition alleged that as a result of a behavioral health disorder,

No. 82967-0-I/2

A.C. presented a likelihood of serious harm to others and/or other's property and was gravely disabled. It further explained that

> [t]he Respondent suffers from a behavioral health disorder as evidenced by bizarre behavior, disorganization, paranoia, delusions, responding to internal stimuli, labile mood, and poor insight.

> Prior to current hospitalization, the Respondent was released from psychiatric hospitalization in June 2021. Continuing to decompensate, the Respondent was found sitting in a doorway talking to self and flapping hands. The Respondent was not able to identify mother as mother and yelled at her to cause fear for her safety and change locks of the home. The Respondent stopped taking all psychiatric medications. The Respondent has not been sleeping and may not be eating. At the hospital, the Respondent was placed in restraints for threats and agitation; code grey was called. During the DCR evaluation, the Respondent continued as paranoid and disorganized, unable to plan for safe discharge from police hold. The Respondent has a history of similar behaviors when decompensated, including violence. The Respondent is currently decompensated and unable to plan for basic health and safety needs.

The petition was signed by a social worker, a physician, and a licensed mental health counselor. The licensed mental health counselor, Kassandra Sparkmon, did not personally examine A.C., instead relying on information available in his charts, consultation with his treatment team (including the physician who signed the petition), and observations made during her limited interactions with A.C. Sparkmon attempted to interview A.C., but terminated the interview after a few minutes when he explained that he did not want to continue.

A.C. filed a motion to dismiss the petition on the basis that Sparkmon, one of the two medical professionals who had signed the petition, had not examined him. The trial court denied the motion, ruling that, under the circumstances presented, the ITA does not require that the people who sign the petition have

No. 82967-0-I/3

personally examined the respondent. After a hearing, the trial court ordered that A.C. be detained at Navos for up to 14 days of involuntary treatment.

A.C. appeals.

II

A.C. contends that the petition for 14 days of involuntary mental health treatment did not meet the statutory requirements set forth in RCW 71.05.230 because one of the medical professionals who signed the petition had not examined him prior to doing so. Under the circumstances presented, however, there is no statutory requirement that the individuals signing the petition have personally examined the respondent. Such a requirement is, instead, only present when the petition is based on substance use disorder treatment. Thus, A.C.'s claim of error fails.

The meaning of a statute is a question of law that we review de novo. State v. Christensen, 153 Wn.2d 186, 194, 102 P.3d 789 (2004). In interpreting a statute, a court's primary obligation is to give effect to the legislature's intent. Christensen, 153 Wn.2d at 194. The inquiry begins with the plain language of the statute. Christensen, 153 Wn.2d at 194. "A statute that is clear on its face is not subject to judicial construction." State v. J.M., 144 Wn.2d 472, 480, 28 P.3d 720 (2001). Instead, we are "'required to assume the Legislature meant exactly what it said and apply the statute as written.'" HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting Duke v. Boyd, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)).

3

No. 82967-0-I/4

The relevant requirements for a petition for up to 14 days of involuntary mental health treatment are set forth by statute:

(1) *The professional staff of the facility providing evaluation services has analyzed the person's condition*[1] and finds that the condition is caused by a behavioral health disorder and results in: (a) A likelihood of serious harm; (b) the person being gravely disabled; or (c) the person being in need of assisted outpatient behavioral health treatment; and are prepared to testify those conditions are met; and

(2) The person has been advised of the need for voluntary treatment and the professional staff of the facility has evidence that he or she has not in good faith volunteered; and

(3) The facility providing intensive treatment is certified to provide such treatment by the department or under RCW 71.05.745; and

(4)(a)(i) The professional staff of the facility or the designated crisis responder has filed a petition with the court for a fourteen day involuntary detention or a ninety day less restrictive alternative. The petition must be signed by:

(A) One physician, physician assistant, or psychiatric advanced registered nurse practitioner; and

(B) One physician, physician assistant, psychiatric advanced registered nurse practitioner, or mental health professional.

(ii) *If the petition is for substance use disorder treatment*, the petition may be signed by a substance use disorder professional instead of a mental health professional and by an advanced registered nurse practitioner instead of a psychiatric advanced registered nurse practitioner. *The persons signing the petition must have examined the person.*

(b) If involuntary detention is sought the petition shall state facts that support the finding that such person, as a result of a behavioral health disorder, presents a likelihood of serious harm, or is gravely disabled and that there are no less restrictive alternatives to detention in the best interest of such person or others. The petition shall state specifically that less restrictive alternative treatment was considered and specify why treatment less restrictive than detention is not appropriate.

RCW 71.05.230 (emphasis added).

---

[1] A.C. does not contend that the professional staff at Navos failed to analyze his condition.

4

No. 82967-0-I/5

The plain language of the statute indicates that if the petition is premised on a substance use disorder, the persons signing the petition must have examined the respondent. No such requirement exists when the petition is not premised on a substance use disorder. This is made clear by the location of the sentence requiring that the petitioner has examined the respondent. The requirement appears in RCW 71.05.230(4)(a)(ii), which—by its terms—is applicable "[i]f the petition is for substance use disorder treatment." Accordingly, we conclude that the persons signing the petition must have examined the respondent only when the petition is for substance use disorder treatment. As the petition to commit A.C. for mental health treatment was not premised upon a need for substance use disorder treatment, the examination requirement was not applicable.

A.C. avers that despite the statutory language and structure indicating otherwise, the legislature intended that the requirement apply to all petitions, not just those premised upon substance use disorder treatment. This is so, according to A.C., because a prior version of the statute[2] imposed such a

---

[2] Prior to amendments in 2017, RCW 71.05.230(4) provided:

    (4) The professional staff of the agency or facility or the designated mental health professional has filed a petition with the court for a fourteen day involuntary detention or a ninety day less restrictive alternative. The petition must be signed either by:
        (a) Two physicians;
        (b) One physician and a mental health professional;
        (c) One physician assistant and a mental health professional; or
        (d) One psychiatric advanced registered nurse practitioner and a mental health professional. The persons signing the petition must have examined the person. If involuntary detention is sought the petition shall state facts that support the finding that such person, as a result of mental disorder, presents a likelihood of serious harm, or is gravely disabled and that there are no less restrictive alternatives to detention in the best interest of such person or others. The petition shall state specifically that less restrictive alternative treatment was considered and specify why treatment less restrictive than detention is not appropriate. If an

5

requirement. We are not persuaded. A subsequent legislative amendment removed this requirement for most petitions. Had the legislature intended it to apply to all petitions, it could have placed the examination-by-signor requirement in subsection (4)(b), along with the other generally applicable requirements for petitions, such as stating supportive facts and explaining why a less restrictive alternative was not deemed appropriate. We conclude that the legislature's intent is clearly expressed in the words it chose to state its collective will.

As the ITA does not require that the people who signed a petition for up to 14 days of involuntary mental health treatment have personally examined the respondent, A.C. fails to establish any entitlement to relief.

Affirmed.

WE CONCUR:

---

involuntary less restrictive alternative is sought, the petition shall state facts that support the finding that such person, as a result of mental disorder, presents a likelihood of serious harm, is gravely disabled, or is in need of assisted outpatient mental health treatment, and shall set forth any recommendations for less restrictive alternative treatment services.

Former RCW 71.05.230 (2016).

6