IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. SALEEM MUMIN ROBINSON, Appellant. | No. 87244-3-I DIVISION ONE UNPUBLISHED OPINION |

BUI, J. — On the same day he was involved in a vehicle collision, Saleem Robinson applied and was approved by Progressive for vehicle insurance coverage. The next day, he contacted Progressive, reported the collision to a Progressive employee, and filed a claim. Evidence of this recorded telephone conversation was admitted in his criminal trial for insurance fraud and theft. Robinson challenges the use of the recorded telephone call, contending that it violated the "Washington Privacy Act" (WPA). See RCW 9.73.030. We affirm.

FACTS

On May 18, 2021, Saleem Robinson drove and rear-ended a vehicle driven by Mohamed Waggeh. Both drivers immediately pulled over and exchanged information. Using his phone, Waggeh took photos of the cars and documents Robinson presented, which included Robinson's driver's license, vehicle registration, and insurance information. Waggeh testified that the insurance document had the company name "Accord" and the statement "this certificate is issued as a matter of information only . . . [t]his certificate does not

admit, extend, or [INAUDIBLE] the coverage afforded by the policy below."

Waggeh contacted the phone number located on that insurance document but he

was not successful reaching anyone. The screenshots of the photos taken by

Waggeh showed time stamps from 12:42 p.m. to 12:46 p.m. Waggeh then

contacted his insurance company GEICO and reported he was in an automobile

collision.

On the same day, May 18, at 6:06 p.m.,[1] Progressive approved Robinson

for insurance coverage on the same vehicle involved in the collision. Robinson

purchased insurance coverage online.

The next morning on May 19, Robinson called Progressive to report the

collision and file a claim. During the call, Robinson told a Progressive

representative, named Samantha, the collision occurred on May 18, around 6:15

p.m., which turned out to be false. Robinson told Samantha his name, address,

phone number, and answered a series of questions about the collision. Some of

the questions included whether his vehicle was still drivable, whether there were

fluids leaking from the vehicle, whether the car's wheels were damaged, if any

airbags deployed, whether there were any injuries, and whether the engine was

starting and running.

At the end of the call, Samantha gave Robinson a claim number and

stated, "a claims representative . . . will be contacting you by end of the next

business day . . . [T]hey'll go over any additional claim, details, [and] answer any

questions . . . [D]id you want them to contact you on the number you're calling in

---

[1] The Progressive insurance policy timestamp recorded 9:06 p.m. Eastern Time; all timestamps in this opinion reflect Pacific Time.

[on]?" and Robinson confirmed his callback number. They ended their conversation, which lasted six minutes. There was no indication, either from Samantha or any prerecorded message before they spoke that the call would be recorded.

Robinson's claim was automatically flagged by Progressive's system for investigation because it was filed within 10 days of purchasing an insurance policy.

After Robinson's call with Samantha, Robinson engaged in recorded telephone calls with other Progressive representatives and a detective for the insurance commissioner. At the beginning of each of these telephone calls, Robinson was notified the calls were recorded. Robinson had an hour-long conversation with Progressive's Special Investigation Unit's representative, Zachary Kodatt. Robinson told Kodatt mostly the same information he shared with Samantha, that he purchased an insurance policy prior to the collision, that the collision occurred at 6:15 p.m., and that he did not collect any information from Waggeh or take photos of the scene. Robinson also told Kodatt traffic was not heavy and explained he did not obtain Waggeh's information due to a language barrier. At Kodatt's request, Robinson filed a police report of the accident and reported the collision occurred around 6:15 p.m.

The next day on May 20, Progressive's claims adjuster, Nina Snyder, called Robinson to get additional information about the accident. Robinson told Snyder the accident occurred around 6:15 p.m., that he did not obtain information from Waggeh due to a language barrier, and at the time of the collision, traffic

3

was fairly light. He added he was not able to take pictures of the scene because his phone slid off the dashboard of his vehicle.

Progressive field investigator, Lisa Hughes, was assigned to conduct further investigation, after reviewing the information obtained by Kodatt and Snyder. On June 4, Hughes spoke with Robinson and told him the purpose of the call, her role in processing the claim, and that Progressive may request additional documents. A month later, the collision timing was still unconfirmed.

On July 9, Hughes called Robinson again, and the call was recorded. She asked Robinson to provide a record of his telephone calls on the day of the collision. The call log revealed Robinson made multiple calls to auto part shops prior to 6:15 p.m. Hughes followed up with another telephone call to Robinson to ask him the nature and reasons for his calls to the auto part businesses. Robinson explained to Hughes that the "young men" he worked with had issues with their vehicles and he was helping them to contact auto businesses about possible repairs to their vehicles, not repairs of his own vehicle.

Concurrent with Progressive's investigation, Waggeh's insurance company GEICO also looked into Waggeh's claim. Geico assigned investigator, Mitchell Smith to investigate the collision. Waggeh reported to GEICO that the collision occurred around 12:40 p.m., a different time from what Robinson reported, on May 18, and Waggeh sent photographs he took of the scene and of Robinson's driver's license. The photographs' metadata indicated the photos were taken around 12:40 p.m.

On July 12, GEICO notified Progressive that Waggeh's reported collision was potentially linked to Robinson's insurance claim. A day later, Progressive claim adjuster Lisa McTarsney called Robinson, and during that conversation, Robinson withdrew his claim. Although Robinson withdrew his claim, Progressive still had a duty to handle repairs for Waggeh if Robinson had adequate coverage and was at fault.

On July 21, after McTarsney confirmed the presumed collision time with GEICO, McTarsney called Robinson to inquire about the date he applied for coverage in relation to the date of the collision, and whether Robinson "made a mistake" when he reported the collision time was 6:15 pm. Robinson maintained he applied for the policy before the collision. McTarsney told Robinson that Waggeh's photographs' metadata showed the collision occurred around 12:40 p.m., and Robinson responded the collision could have occurred earlier than he remembered.

Progressive referred their investigation to the Washington State Office of the Insurance Commissioner to determine whether an insurance related crime occurred. Detective Ron Somerville, the primary investigator, conducted a recorded phone interview with Robinson on January 20, 2022, where Robinson stated to Somerville that he purchased the Progressive policy before the collision.

On March 26, 2024, the State filed an amended information, charging Robinson with felony fraudulent insurance claim and attempted theft in the first degree. On April 2, the trial court heard, out of the presence of the jury,

5

Robinson's motion to suppress the telephone conversation with Samantha. Robinson argued the call was a violation of the WPA because he was recorded without his consent and he subjectively and reasonably intended for the call to be private. The trial court entered an oral ruling, denying to exclude the call and evidence obtained therefrom, concluding that even if Robinson subjectively intended the conversation to be private, it was not reasonable. The trial court entered its written ruling on May 9. On April 16, during the jury selection phase of trial, the court denied Robinson's motion to reconsider.

The jury deadlocked and was unable to reach a verdict at the first trial. On September 3, 2024, Robinson had a retrial before a different judge. Robinson again motioned to suppress the call with Samantha and all evidence derived therefrom. After hearing argument, the judge adopted the first trial judge's ruling, and applied the doctrine of collateral estoppel. The jury found Robinson guilty of felony fraudulent insurance claim and attempted theft in the first degree.

Robinson timely appealed.

ANALYSIS

Robinson contends the trial court erred by admitting the call with Samantha  and all information derived therefrom, in violation of the WPA. Even if the trial court erred in concluding the call to Samantha was not protected under the WPA, its admission was harmless. Thus, we affirm the conviction because there was no showing of prejudice.

Under the WPA, recording private conversations without the consent of all parties is generally prohibited. RCW 9.73.030. Our state has a long history of

6

statutory protection of private communications and conversations. State v. Kipp, 179 Wn.2d 718, 724, 317 P.3d 1029 (2014). "Washington State's privacy act is considered one of the most restrictive in the nation." Kipp, 179 Wn.2d at 724. "Failure to suppress evidence obtained in violation of the [WPA] is prejudicial unless, within reasonable probability, the erroneous admission of the evidence did not materially affect the outcome of the trial." State v. Christensen, 153 Wn.2d 186, 200, 102 P.3d 789 (2004) (citing State v. Porter, 98 Wn. App. 631, 638, 990 P.2d 460 (1999)).

The WPA requires exclusion of " 'evidence exclusively and directly flowing from a privacy act violation.' " Kipp, 179 Wn.2d at 731 n.6 (quoting State v. Faford, 128 Wn.2d 476, 488-89, 910 P.2d 447 (1996)).[2] "For the exclusionary rule to apply, there must be some proximate causal connection between the misconduct and the evidence." State v. Mayfield, 192 Wn.2d 871, 889, 434 P.3d 58 (2019). Even where the misconduct was a "but-for" cause of the discovery of the evidence, the evidence " 'is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to . . . other lawful means independent of the unlawful action.' " Mayfield, 192 Wn.2d at 889 (quoting State v. Gaines, 154 Wn.2d 711, 718, 116 P.3d 993 (2005)).[3] However, even if the admission of the call with Samantha was erroneous, any error would be harmless

---

[2] Emphasis added.
[3] See also State v. Betancourth, 190 Wn.2d 357, 373, 413 P.3d 566 (2018) (finding evidence obtained pursuant to a defective warrant admissible because a second valid warrant was issued for the same evidence where the illegal search did not contribute to the issuance of the valid warrant).

because the record shows there was incriminating evidence that was obtained independent from the information gleaned from the call to Samantha.

Progressive had an automatic flagging system that notified its investigative team to follow up with Robinson because his claim was filed "within seven or eight minutes of the policy purchase."

Progressive representatives learned details about the collision from GEICO representatives, and then using the information gleaned, had multiple conversations with Robinson, recorded with his consent, where he disclosed details about the collision.

On July 20 a GEICO representative contacted Lisa McTarsney, a claims adjuster at Progressive, and told McTarsney the time of the collision was 12:40 p.m. on May 18, a different time than what Robinson reported. GEICO obtained the date and time of the collision, which it passed on to Progressive, from the meta data that was generated when Waggeh sent a picture of Robinson's driver's license. McTarsney then followed up by having a recorded conversation with Robinson, where Robinson admitted the collision could have occurred earlier in the day than what he previously indicated to Progressive representatives.

Lisa Hughes, field representative investigator with Progressive, had a recorded conversation with Robinson where she asked questions about his calls to vehicle repair shops using the cell phone records that Robinson provided to Hughes. When Hughes asked Robinson why the calls were made before the time

of the collision, Robinson stated he was calling for other individuals about their cars, and not about his vehicle.

Finally, Robinson had a recorded telephone interview with detectives Somerville and Ted DeHart from the Office of Insurance Commissioner, where Robinson maintained his stated position that he purchased his policy before the collision.

In summary, the investigation by the representatives from GEICO, Progressive, and the office of the insurance commissioner, were independent and did not flow from the details provided by Robinson during his call with Samantha. Therefore, the admission of the call with Samantha did not materially affect the outcome of the trial.

We affirm.

WE CONCUR:

_Brii, J._

_Birk, J._                    _Mann, J._