

2014 JUL -7  AM 9:45

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71640-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SERGEY V. GENSITSKIY, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 7, 2014 |

SCHINDLER, J. — Sergey V. Gensitskiy appeals the jury convictions on two counts

of child molestation in the first degree, two counts of child molestation in the second

degree, two counts of child molestation in the third degree, and four counts of incest in

the second degree. We affirm in part, reverse in part, and remand for resentencing.

FACTS

On August 30, 2011, the State charged Sergey V. Gensitskiy by amended

information with 12 counts of child molestation and incest. Count 1 charged Gensitskiy

with child molestation in the first degree of D.G., alleging that between October 3, 1995

and October 2, 1997, Gensitskiy had sexual contact with D.G. when D.G. was less than

12-years-old.[1] Count 2 charged Gensitskiy with child molestation in the first degree of

___

[1] The information refers to two victims as D.S.G. For purposes of clarity, we refer to the victim in Count 1 as D.G.

C.S.G., alleging Gensitskiy had sexual contact with C.S.G. between March 1, 2001 and February 28, 2007 when C.S.G. was less than 12-years-old. Count 3 charged child molestation in the second degree of C.S.G., alleging Gensitskiy had sexual contact with C.S.G. between March 1, 2007 and March 28, 2009 when C.S.G. was at least 12-years-old but less than 14-years-old. Counts 4 and 5 charged Gensitskiy with child molestation in the third degree of C.S.G. that occurred between March 1, 2009 and October 1, 2010 when C.S.G. was at least 14-years-old but less than 16-years-old. Count 6 charged Gensitskiy with child molestation in the first degree of V.S.G. between November 28, 2006 and November 27, 2009 when V.S.G. was less than 12-years-old. Counts 7 and 8 charged Gensitskiy with child molestation in the second degree of D.S.G., alleging that on two separate and distinct occasions, Gensitskiy had sexual contact with D.S.G. between July 16, 1997 and July 15, 2003 when D.S.G. "was less than fourteen (14) years old." Counts 9, 10, and 11 charged Gensitskiy with incest in the second degree of D.S.G. between June 1, 2010 and September 30, 2010. Count 12 charged Gensitskiy with child molestation in the second degree of R.S.G. between October 24, 2005 and October 23, 2007 when R.S.G. was at least 12-years-old but less than 14-years-old. The State also alleged as aggravating factors that Gensitskiy used his position of trust or confidence to facilitate the commission of the offenses under RCW 9.94A.535(3)(n), and that certain offenses were part of an ongoing pattern of sexual abuse of the same victim under RCW 9.94A.535(3)(g). Gensitskiy entered a plea of not guilty.

The eight-day jury trial began on July 31, 2012. A number of witnesses testified, including D.G., V.S.G., D.S.G., C.S.G., R.S.G., lead detective Barry Folsom, and the foster parents of C.S.G., Randy and Tami Patterson. Gensitskiy testified and denied the allegations of child molestation and incest.

The jury found Gensitskiy not guilty of child molestation in the first degree of D.G. as charged in Count 1, and not guilty of child molestation in the second degree of R.S.G. as charged in Count 12. The jury found Gensitskiy guilty of child molestation in the first degree of C.S.G. and V.S.G., Count 2 and Count 6; child molestation in the second degree of C.S.G. and D.S.G., Count 3 and Count 7; two counts of child molestation in the third degree of C.S.G., Count 4 and Count 5; and four counts of incest in the second degree of D.S.G., Counts 8, 9, 10, and 11. By special verdict, the jury found Gensitskiy used his position of trust to facilitate the commission of the current offenses under RCW 9.94A.535(3)(n), and certain offenses were part of an ongoing pattern of sexual abuse of the same victim under RCW 9.94A.535(3)(g).

## ANALYSIS

### Essential Element of the Crime: Count 7

Gensitskiy challenges his conviction of molestation in the second degree of D.S.G., Count 7, on the grounds that the information did not allege an essential element of the crime. We agree.

Under article I, section 22, amendment 10 of the Washington State Constitution, the accused has a right to be informed of the criminal charge against him so he may prepare and mount a defense at trial. State v. McCarty, 140 Wn.2d 420, 424-25, 998 P.2d 296 (2000). The charging document must state all the essential elements of the

crime charged. McCarty, 140 Wn.2d at 425. Failure to allege each element means the information is insufficient to charge a crime and so must be dismissed. State v. Nonog, 169 Wn.2d 220, 226, 237 P.3d 250 (2010).

We apply a liberal construction rule for challenges to the information raised for the first time on appeal and employ a two-prong test:

> (1) [D]o the necessary elements appear in any form, or by fair construction can they be found, in the information, and if so (2) can the defendant show he or she was actually prejudiced by the inartful language.

McCarty, 140 Wn.2d at 425. If the necessary elements are not found or fairly implied, we presume prejudice and reverse without reaching the second prong. McCarty, 140 Wn.2d at 425.

RCW 9A.44.086(1) states, in pertinent part:

> A person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old.[2]

The information charging Gensitskiy with child molestation in the second degree in Count 7 alleges only that D.S.G was "less than fourteen (14) years old." There is no reading or fair construction of the information that alleges D.S.G. was over the age of 12. Count 7 must be reversed without prejudice. State v. Quismundo, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

Second Amended Information

Gensitskiy asserts the court erred in granting the State's motion to amend the information at the end of the trial to charge a different crime for Count 8 and expand the charging period for the three counts of incest in the second degree, Counts 9, 10, and

---

[2] Emphasis added.

4

11, from "between June 1, 2010 and September 30, 2010" to "between July 16, 1994 and October 1, 2010."

We review a trial court's ruling on a motion to amend an information for abuse of discretion. State v. James, 108 Wn.2d 483, 490, 739 P.2d 699 (1987). A defendant has the constitutional right to be notified of the nature of the charges against him. WASH. CONST. art I, § 22, amend. 10. A trial court may permit the State to amend the information at any time before verdict or finding if the defendant's substantial rights are not prejudiced. CrR 2.1(d).

Amending an information to charge a new crime after the State rests violates the defendant's rights under article I, section 22. State v. Pelkey, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). Gensitskiy asserts amending the information to allege a new crime in Count 8 violates his constitutional rights. The State concedes Count 8 must be dismissed with prejudice. We accept the State's concession.

Gensitskiy contends granting the motion to amend the information to expand the charging period for Counts 9, 10, and 11 from a 4-month period of time in 2010 to a 16-year period of time of July 1994 to October 2010 after cross-examination of the victims and after the defense called its expert witness was prejudicial. As a general rule, amending the charging periods is permitted unless the amendment compromises an alibi defense or the defendant demonstrates specific prejudice. State v. DeBolt, 61 Wn. App. 58, 61-63, 808 P.2d 794 (1991). The defendant bears the burden of showing prejudice. State v. Gosser, 33 Wn. App. 428, 435, 656 P.2d 514 (1982). Gensitskiy has met his burden of establishing prejudice.

Before the State called C.S.G. as its second-to-last witness, the prosecutor noted the State "anticipate[d] needing to amend the Information prior to the close of the case based on the testimony of [D.S.G.] and [V.S.G.] However, we're essentially in the process of getting their testimony transcribed so that I can make a decision on that." The prosecutor stated, "I just wanted to put that out there that I'm going to move to amend the Information to conform the evidence. And because I anticipate possibly resting the case this morning, so I just wanted to bring that out there."

The State rested on August 6 and the defense called an expert witness on childhood memory to testify. On August 7, the State moved to amend the information to change the charging period on Counts 9, 10, and 11 from 4 months in 2010 to a 16-year period from 1994 to 2010.[3] The defense attorney objected. The attorney argued, in pertinent part:

> [Our defense] has something to do with memory, as the Court knows, and so when you expand dates and things of that nature, it may affect how I would have or would not have done cross-exam of certain witnesses.
> So at this point in time, while thanking Counsel for concurring with my opinion, I still want to have an opportunity to look at the dates.

The court reserved ruling on the motion to amend. At the conclusion of the case on August 9, over the objection of the defense, the court granted the motion to amend the information.

---

[3] The State also moved to amend the charging period for Count 3 from between March 1, 2007 and March 28, 2009 to between March 1, 2007 and February 28, 2009; amend the charging period for Count 7 from between July 16, 1997 and July 15, 2003 to between July 16, 1994 and July 15, 2001; and amend the charging period for Count 8 and allege the new crime of incest in the second degree. The State proposed amending Count 7 from the crime of child molestation in the second degree to the crime of child molestation in the first degree.

Because Gensitskiy has demonstrated specific prejudice, we conclude the court abused its discretion in granting the motion to amend the information at the end of trial to expand the charging period for Counts 9, 10, and 11. The second amended information expanded the charging period from a few months in 2010 to a span of 16 years, and the court granted the motion to amend after the completion of cross-examination of the State's witnesses and at the end of the case. Counts 9, 10, and 11 must be reversed with prejudice.

Sufficiency of the Evidence

Gensitskiy argues insufficient evidence supports the conviction of child molestation of C.S.G. in the first degree as charged in Count 2 and child molestation of V.S.G. in the first degree as charged in Count 6. Gensitskiy asserts there is no evidence he had sexual contact with either C.S.G. or V.S.G. The State concedes there is insufficient evidence to support the conviction of child molestation of V.S.G. as charged in Count 6. We accept the State's concession that Count 6 must be reversed with prejudice.

The State argues sufficient evidence supports the conviction of child molestation in the first degree of C.S.G. as charged in Count 2. Gensitskiy asserts insufficient evidence supports the conviction because the State failed to prove that he touched C.S.G. for the purpose of sexual gratification.

Sufficient evidence supports a conviction when, viewed in the light most favorable to the State, a rational fact finder could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); State v. Colquitt, 133 Wn. App. 789, 796, 137 P.3d 892 (2006). A claim of insufficiency admits the truth

of the State's evidence and all inferences reasonably drawn from the evidence. Salinas, 119 Wn.2d at 201. We defer to the fact finder on issues of witness credibility and the persuasiveness of evidence. See State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985).

RCW 9A.44.083(1) defines the crime of child molestation in the first degree and prohibits sexual contact with a person who is under age 12 where the perpetrator is at least 36 months older and not married to the victim. "Sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "The statute is directed to protecting the parts of the body in close proximity to the primary erogenous areas which a reasonable person could deem private with respect to salacious touching by another." In re Welfare of Adams, 24 Wn. App. 517, 521, 601 P.2d 995 (1979). In determining whether contact is intimate within the meaning of the statute, the question is whether the conduct is of such a nature "that a person of common intelligence could fairly be expected to know that under the circumstances the parts touched were intimate and, therefore, the touching was improper." Adams, 24 Wn. App. at 521. "Sexual gratification" is not an essential element of first degree child molestation, but clarifies the meaning of the term "sexual contact." State v. Lorenz, 152 Wn.2d 22, 34-35, 93 P.3d 133 (2004). A showing of sexual gratification is required "because without that showing[,] the touching may be inadvertent." State v. T.E.H., 91 Wn. App. 908, 916, 960 P.2d 441 (1998).

Gensitskiy relies on State v. Powell, 62 Wn. App. 914, 816 P.2d 86 (1991), to argue insufficient evidence supports finding him guilty of child molestation in the first degree of C.S.G. In Powell, the defendant hugged a child around the chest, touched her groin through her underwear when helping her off his lap, and touched her thighs. Powell, 62 Wn. App. at 916. The court noted that each touch was outside the child's clothes and was susceptible to an innocent explanation. Powell, 62 Wn. App. at 918. The touching was described as "fleeting" and the evidence of the defendant's purpose was "equivocal." Powell, 62 Wn. App. at 917-18. The court determined that the evidence was insufficient to support the inference that the defendant touched the child for the purpose of sexual gratification. Powell, 62 Wn. App. at 918.

The court in Powell required "additional evidence of sexual gratification" where an adult is a caretaker for a child "in those cases in which the evidence shows touching through clothing, or touching of intimate parts of the body other than the primary erogenous areas." Powell, 62 Wn. App. at 917. The jury may infer sexual gratification from the circumstances of the touching itself where those circumstances are unequivocal and not susceptible to innocent explanation. See State v. Whisenhunt, 96 Wn. App. 18, 24, 980 P.2d 232 (1999) (defendant's conduct was not susceptible to innocent explanation when he touched the victim's genital area over her clothes on three separate occasions); see also State v. Wilson, 56 Wn. App. 63, 68-69, 782 P.2d 224 (1989); T.E.H., 91 Wn. App. at 916-17.

Here, unlike in Powell, there is sufficient evidence for the jury to find "sexual contact" within the meaning of the statute and "sexual gratification." C.S.G. testified that Gensitskiy put his hands down her pants and touched her breasts, buttocks, and

9

genitals on numerous occasions. C.S.G. testified that she could recall "a couple incidents" when her father touched her inappropriately when she was "very young." C.S.G. said that when she was under the age of 7, her father would come into her room, take off her pajamas, and rub her "upper thighs" on "the insides of our legs . . . on the skin." C.S.G. testified that after the age of 10, Gensitskiy would enter the bathroom while she was showering and touch her buttocks. C.S.G. stated that starting around the age of 12 or 13, Gensitskiy would touch her breasts "under my clothes" on a weekly basis. Based on this testimony, a rational trier of fact could have found that Gensitskiy touched the intimate parts of C.S.G. for the purpose of gratifying his sexual desire.

Limiting Instruction

Gensitskiy argues the court abused its discretion by waiting to give a limiting instruction regarding the use of impeachment evidence until the end of trial. As a general rule, the court should give a limiting instruction when requested if evidence is admitted for a limited purpose. State v. Redmond, 150 Wn.2d 489, 496, 78 P.3d 1001 (2003). But it is within a trial court's discretion to choose instead to give a limiting instruction at the close of all the evidence. State v. Ramirez, 62 Wn. App. 301, 304-05, 814 P.2d 227 (1991).

On the second day of trial, V.S.G. testified and recanted. V.S.G. testified Gensitskiy never touched him inappropriately. The State relied on an interview transcript to refresh V.S.G.'s memory and impeach his testimony with prior inconsistent statements. Defense counsel objected to the State's use of the transcript for impeachment purposes:

> Your honor, this witness has clearly outlined the fact that what was in the report, he was fabricating, doesn't agree with it. [The transcript] doesn't

meet the threshold requirements to be used as a document as substantive evidence and, therefore, we are requesting the Court to advise the jury that this conversation is not substantive evidence, it's only for the purpose of impeachment of this witness.

Defense counsel stated that he would like an instruction given at the end of V.S.G.'s testimony. The court indicated it would look at the instruction when proposed. Defense counsel did not request a limiting instruction at the conclusion of V.S.G.'s testimony.

During her testimony on the second and third day of trial, D.S.G. also recanted. The State used transcripts from D.S.G's interviews with Detective Folsom and her prior sworn statement to impeach her testimony with prior inconsistent statements.

On the fourth day of trial, Gensitskiy proposed a formal jury instruction. The court decided to give the limiting instruction at the close of the case, stating, in pertinent part:

Because the person that we were concerned about is already past, I don't want to unduly influence one instruction over any of the others. Remember, the final instruction is to take them as a whole, not as an individual instruction. So I'm going to hold this and give it with the rest of the packet.

On this record, the court did not abuse its discretion by waiting until the close of all testimony to give the limiting instruction to the jury.

Privacy Act

Gensitskiy argues Randy Patterson's testimony regarding the conversation he overheard between D.S.G. and her mother violated the Privacy Act, chapter 9.73 RCW. "The act prohibits anyone not operating under a court order from intercepting or recording certain communications without the consent of all parties." State v. Roden,

179 Wn.2d 893, 898, 321 P.3d 1183 (2014). The Privacy Act provides, in pertinent part:

> Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
>
> (a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;
>
> (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

RCW 9.73.030(1).

As a general rule, evidence obtained in violation of the Privacy Act is inadmissible. RCW 9.73.050. In order for a violation to occur, "[t]here must have been (1) a private communication transmitted by a device, which was (2) intercepted by use of (3) a device designed to record and/or transmit, (4) without the consent of all parties to the private communication." State v. Christensen, 153 Wn.2d 186, 192, 102, P.3d 789 (2004).

After leaving home, C.S.G. lived with family friends Randy and Tami Patterson. Randy testified that in December 2011, D.S.G. called to ask if she could visit with C.S.G and take her out for coffee. Randy told D.S.G. she could come to their house and see C.S.G. but he did not want C.S.G. leaving the house on a school night. D.S.G. hung up but unwittingly redialed Randy. When Randy answered his phone, he overheard D.S.G. speaking with her mother about getting C.S.G. out of the Patterson home, and D.S.G.'s belief that the Pattersons no longer trusted her.

12

Defense counsel objected on the grounds that this was "eavesdropping on an electronic conversations [sic] without permission." The court overruled the objection, stating that "this gentleman did not initiate the phone call, so I don't think it fits in that category." The prosecutor also noted that the statements D.S.G. made were being offered for impeachment, not for their truth. We agree that because Randy did not "intercept" D.S.G.'s conversation under RCW 9.73.030(1), Randy's testimony did not violate the Privacy Act.

Christensen is distinguishable. In Christensen, the mother purposefully intercepted her daughter's telephone conversation with her boyfriend in order to assist police with a criminal investigation of the boyfriend. Christensen, 153 Wn.2d at 190-91. The mother intercepted the call by activating the speakerphone function at the base of the cordless phone. Christensen, 153 Wn.2d at 190.

Indeterminate Sentence

Gensitskiy argues the indeterminate sentence for child molestation in the first degree of C.S.G., Count 2, violates the constitutional prohibition against ex post facto laws because RCW 9.94A.507 was not in effect for part of the charging period alleged in Count 2.[4] The State concedes Gensitskiy must be resentenced on Count 2 to a determinate sentence. We accept the State's concession. See State v. Parker, 132 Wn.2d 182, 191, 937 P.2d 575 (1997) ("Use of the increased penalties without requiring the State to prove the acts occurred after the effective dates of the increased penalties would violate the ex post facto clause of both the United States and Washington Constitutions."); see also U.S. CONST. art. I, § 9; WASH. CONST. art. I, § 23.

---

[4] RCW 9.94A.507 was enacted in 2001. LAWS OF 2001, 2nd Spec. Sess., ch. 12, § 303. The effective date was September 1, 2001. The charging period for Count 2 begins March 1, 2001.

13

We reverse and dismiss with prejudice Counts 6, 8, 9, 10, and 11, dismiss the conviction for Count 7 without prejudice, affirm the remaining convictions, and remand for resentencing.

WE CONCUR: